UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | CASE NO. C19-5768-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1979.[1] He has two years of college education and culinary

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

training, and has worked as a customer service representative, pizza deliverer, and security officer. (AR 287-88.)

Plaintiff applied for DIB in September 2016, alleging disability as of May 11, 2015.[2] (AR 272-73.) Plaintiff's date last insured (DLI) is December 31, 2015. (AR 13.) Plaintiff's DIB application was denied and Plaintiff timely requested a hearing. (AR 204-10, 212-20.) On April 26, 2018, ALJ Virginia Robinson held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 68-105.) On August 28, 2018, the ALJ issued a decision finding Plaintiff not disabled prior to his DLI. (AR 10-28.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on June 16, 2019 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff did work after the alleged disability onset date, but that this work did not rise to the level of substantial gainful activity (SGA). (AR 13.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that through the DLI, Plaintiff's degenerative disease, GERD, hypertension, obesity, affective disorder, and anxiety disorder were severe impairments. (AR 13.)

---

[2] At the administrative hearing, Plaintiff amended his alleged onset date to July 31, 2015. (AR 77-78.)

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 2

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 13-16.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that through the DLI, Plaintiff was capable of performing sedentary work, with additional limitations: he could lift/carry up to 10 pounds occasionally, stand or walk for approximately two hours, and sit for approximately six hours per eight-hour workday with normal breaks. He could occasionally climb ramps or stairs, but could never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, and crawl, and frequently crouch. He should have avoided concentrated exposure to excessive vibration and workplace hazards such as working with dangerous machinery and working at unprotected heights. He was able to perform detailed but not complex tasks and perform tasks in a job an unimpaired individual could learn in up to 90 days. He could have superficial interaction with co-workers and incidental interaction with the public in person, but could "have contact with the public by telephone." (AR 16-17.) With that assessment, the ALJ found that through the DLI, Plaintiff was able to perform past relevant work as an order clerk. (AR 26.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Although the ALJ found Plaintiff capable of performing past relevant work, the ALJ proceeded to step five in the alternative, and found that through the DLI Plaintiff could have also performed representative occupations such as final assembler, table worker, and masker. (AR 26-27.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting his subjective symptom testimony, (2) failing to address a lay statement, and (3) assessing certain medical evidence and opinions.[3] The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Subjective symptom testimony

The ALJ discounted Plaintiff's subjective allegations for a number of reasons, including (1) an examining psychologist opined that vocational training would minimize or eliminate Plaintiff's barriers to employment, (2) the medical record and Plaintiff's activities indicated that his social limitations were less severe than he alleged, (3) the record shows that Plaintiff's mental conditions improved with exercise, (4) Plaintiff's physical conditions did not cause disabling limitations during the adjudicated period, and (5) Plaintiff's part-time work suggests that he could

---

[3] Plaintiff's opening brief also challenges the ALJ's step-five findings based on his assertion that one of the jobs identified at step five (final assembler) is a light job, which is inconsistent with the ALJ's RFC assessment. Dkt. 10 at 18. This discrepancy may be the result of a scrivener's error, as the Commissioner alleges (Dkt. 11 at 17-18), but because this case must be remanded on other grounds as explained *infra*, the ALJ will have the opportunity to reconsider the step-five findings on remand and the Court need not further address this issue at this time.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 4

perform SGA. (AR 18-24.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

First, Plaintiff contends that the ALJ erred in finding that his marriage and desire to have children undermined his allegations of social deficits and a worsening mental condition. (*See* AR 20.) The Court agrees that Plaintiff's relationship with his wife and his desire for children does not contradict any social limitation he described: he testified that he does not like being around a lot of people, which is not inconsistent with being married.

Plaintiff next argues that the ALJ erred in finding that his part-time job demonstrated that he was capable of performing SGA, given that he worked only two hours per day with a two-hour break and did not start this job until after his DLI. Dkt. 10 at 13. The Court agrees with Plaintiff that the ALJ's inference was unreasonable in light of the timing of the work: Plaintiff's ability to perform limited work after his DLI is not a convincing reason to discount his allegation of an inability to perform SGA during the adjudicated period.

Plaintiff also argues that the ALJ erred in discounting his testimony based on Dr. Neims's opinions. The ALJ disagreed with counsel's argument at the hearing that when Dr. Neims's 2013 and 2015 opinions are compared, it is clear that Plaintiff's mental condition had deteriorated. (AR 18.) On the contrary, the ALJ found that Dr. Neims's 2015 opinion demonstrated improvement since 2013, particularly because Dr. Neims opined in 2015 that Plaintiff's barriers to employment could be minimized or eliminated via vocational training. (AR 361.) Dr. Neims's 2013 opinion is not in the record, and the summary of it in a prior ALJ decision does not mention whether Dr. Neims opined at that time that Plaintiff's barriers in employment could be minimized or eliminated via vocational training. (AR 122-23.) The prior ALJ's summary of the 2013 opinion indicates that most of the marked limitations Dr. Neims found in 2015 he also found in 2013. (*Compare*

AR 24 *with* AR 122-23.) Perhaps Dr. Neims found more moderate limitations in 2013 than in 2015 (*id.*), but without a copy of Dr. Neims's 2013 opinion it is difficult to extensively compare them. Without the possibility of a side-by-side comparison of the 2013 and 2015 opinions from Dr. Neims, the Court finds that the reason emphasized by the ALJ — that Dr. Neims found in 2015 that Plaintiff's barriers to employment could be minimized or eliminated via vocational training — does not necessarily demonstrate improvement since 2013.

In light of these multiple errors in the ALJ's reasoning, the Court finds that the ALJ's decision should be reversed. Although there may be legitimacy to the ALJ's reasoning regarding Plaintiff's improvement with medication, the Court does not find this to be a convincing reason on its own to support the ALJ's assessment of Plaintiff's testimony.

Although Plaintiff asserted that a remand for a finding of disability would be the appropriate remedy for the errors in the ALJ's decision, he has not shown that this extraordinary result is appropriate under the applicable authority. *See Leon v. Berryhill*, 880 F.3d 1044 (9th Cir. 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule."). Thus, the Court finds that a remand for further proceedings is warranted. On remand, the ALJ should reconsider Plaintiff's testimony and supplement the record with Dr. Neims's 2013 opinion, if the ALJ intends to rely on a comparison of the 2013 and 2015 opinions.

<u>Lay statement</u>

Plaintiff's wife wrote a letter describing Plaintiff's symptoms and limitations. (AR 341.) The ALJ did not discuss this letter in the decision.

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). *But see Molina v. Astrue*, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (describing how the failure to address lay testimony may be harmless).

The Commissioner argues that because Plaintiff's wife's testimony was similar to Plaintiff's own testimony, which the ALJ properly discounted, the ALJ's error in failing to specifically address Plaintiff's wife's statement is harmless. Dkt. 11 at 17. As explained *supra*, the ALJ's reasoning with respect to Plaintiff's testimony was deficient, and therefore the ALJ must consider Plaintiff's wife's statement on remand and either credit it or provide legally sufficient reasons to discount it.

Medical evidence

Plaintiff challenges the ALJ's assessment of various medical opinions, each of which the Court will address in turn.

<u>Legal standards</u>

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject doctors' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ

"must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Dr. Neims

As described above, examining psychologist Dr. Neims provided an opinion in July 2015 as to Plaintiff's symptoms and limitations. (AR 359-76.) Dr. Neims opined that Plaintiff had marked limitations in his ability to communicate and perform effectively at work, complete a normal workday and workweek without interruptions from psychological symptoms, and maintain appropriate behavior at work. (AR 361.) The ALJ discounted those marked limitations as internally inconsistent with other aspects of Dr. Neims's opinion. (AR 24.) Specifically, the ALJ found that Dr. Neims's opinion that Plaintiff would have at most mild limitations in his ability to perform both detailed and simple routine tasks as well as his ability to perform routine tasks without special supervision was inconsistent with the marked limitations he found in Plaintiff's ability to communicate and perform effectively and maintain appropriate behavior. (*Id.*) The ALJ also noted that Dr. Neims opined that vocational training would minimize or eliminate Plaintiff's barriers to employment (AR 361), which the ALJ found to be inconsistent with marked functional limitations. (AR 24.) Lastly, the ALJ noted that Dr. Neims was not a treating doctor was therefore not able to assess Plaintiff's response to treatment. (*Id.*)

Plaintiff argues that the ALJ erred in finding that Dr. Neims's opinion regarding the efficacy of vocational training undermined his opinion regarding marked functional limitations, because speculation as to future efficacy of vocational training has no bearing on his current functioning. Dkt. 10 at 5. The Court agrees that the import of Dr. Neims's opinion that Plaintiff's barriers to employment would be minimized or eliminated by vocational training is unclear, given that Dr. Neims is a psychologist, rather than a vocational expert. The ALJ's focus on this portion

of Dr. Neims's opinion seems unreasonable, given that it is vague and unexplained checkbox opinion, and the Court cannot find that this is a legitimate reason to discount the opinion.

The ALJ also erred in finding an internal inconsistency in Dr. Neims's checkbox opinions regarding Plaintiff's functional limitations. The Court agrees with Plaintiff that the communication and behavior limitations noted by Dr. Neims pertained to social abilities, rather than the cognitive abilities implicated in the other parts of the opinion cited by the ALJ. Dkt. 10 at 6-7.

Given these errors, the ALJ must reconsider Dr. Neims's 2015 opinion on remand and either credit it or provide legally sufficient reasons to discount it.

<u>State agency consultants</u>

The ALJ found that Plaintiff was less limited than found by the State agency consultants, in light of the evidence of his improvement in his mental health as well as his ability to work as a courier, which the ALJ found contradicted the consultants' opinion that Plaintiff was unable to concentrate or perform detailed tasks. (AR 24.)

Plaintiff notes that he did not start his courier job until after his DLI, and therefore that work took place outside the adjudicated period and does not contradict an opinion addressing his functioning before the DLI. Dkt. 10 at 8. That may be true, but the ALJ provided another valid reason to discount the State agency opinions: improvement in Plaintiff's mental health. The ALJ's decision details improvement that Plaintiff experienced in his mental health during the adjudicated period, due to medication and exercise. (*See* AR 18-19.) When the ALJ's decision is read as a whole, the ALJ provided sufficient reasoning to discount the State agency opinions based on improvement in Plaintiff's mental health. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to

specific evidence in the medical record.").

Post-DLI opinions

Plaintiff argues that the ALJ erred in respect to several opinions that post-date the DLI, each of which the Court will address in turn.

Dr. Neims's 2017 opinion

Dr. Neims examined Plaintiff again in May 2017 and completed another DSHS form opinion describing his symptoms and limitations. (AR 631-51.) The ALJ gave this opinion moderate weight, finding it consistent with the contemporaneous evidence. (AR 25.)

Plaintiff argues that the ALJ erred in crediting Dr. Neims's opinion because it was rendered outside the adjudicated period. Dkt. 10 at 8. But post-DLI opinions should not be discounted solely based on their timing, because medical opinions are "inevitably rendered retrospectively[.]" *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1998). As Plaintiff notes, Dr. Neims did find some "moderate" limitations in 2017, but those limitations are consistent with the ALJ's RFC assessment: the ALJ limited Plaintiff to performing detailed but not complex tasks, involving only superficial interaction with co-workers and incidental in-person contact with the public. (AR 17.) Accordingly, Plaintiff has not established error in the ALJ's assessment of Dr. Neims's 2017 opinion.

Hector Reyes, M.D.

Dr. Reyes, Plaintiff's treating physician, completed two form medical reports describing Plaintiff's symptoms and limitations, in 2016 and 2018. (AR 942-43, 952-53.) The ALJ gave limited weight to both of Dr. Reyes's opinions, finding them inconsistent with the generally unremarkable or mild clinical findings in the treatment record, and based heavily on Plaintiff's self-report (as described at the hearing). (AR 25.) The ALJ also noted that Dr. Reyes opined in

the 2018 report that Plaintiff's symptoms had been limiting to the same degree since 2010, even though Dr. Reyes did not begin treating Plaintiff until approximately 2014.  (*Id*.)

Plaintiff disputes whether the evidence contained unremarkable or mild clinical findings, as found by the ALJ, but the ALJ's decision outlines this evidence in detail.  (AR 21-22.)  Plaintiff points to evidence that he contends is inconsistent with the ALJ's conclusion (Dkt. 10 at 10), but the ALJ's decision acknowledges this evidence as well.  (AR 21-22.)  The Court will not reweigh the evidence, having found that the ALJ's interpretation is supported by substantial evidence and is based on reasonable inferences.

Plaintiff also points to Dr. Reyes's notes referencing his 2010 lumbar surgeries (AR 379), but the fact that Dr. Reyes knew about Plaintiff's prior surgeries does not explain how Dr. Reyes evaluated Plaintiff's limitations in the years before Dr. Reyes began treating Plaintiff.  The ALJ reasonably found that Dr. Reyes inadequately explained the duration of his 2018 opinion, and properly discounted the opinion on that basis.

Plaintiff also argues that to the extent the ALJ indicated that Dr. Reyes's 2016 opinion was more consistent with the treatment record as well as Plaintiff's report of regular exercise and performing courier work, the ALJ failed to explain how his exercise or courier work related to Dr. Reyes's opinion.  Dkt. 10 at 10. Plaintiff's ability to regularly exercise and work as a courier is, however, consistent with Dr. Reyes's findings that working would not lead to deterioration or absenteeism.  (AR 953.)  Thus, the Court finds no error in this line of the ALJ's reasoning.

Lastly, Plaintiff explained at the administrative hearing that Dr. Reyes completed his medical report while interviewing Plaintiff to ask him about his limitations.  (AR 81-82.)  The ALJ reasonably found that Dr. Reyes's opinion was heavily based on Plaintiff's self-reported limitations, which is a valid reason to discount a medical opinion.  *See Ghanim v. Colvin*, 763 F.3d

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 11

1154, 1162-63 (9th Cir. 2014) (ALJ may reject treating provider's opinions if based "to a large extent" on discredited self-reports and not clinical evidence). Because, as explained earlier in this Order, the ALJ must reconsider Plaintiff's testimony on remand, the ALJ may need to reconsider this line of reasoning with regard to Dr. Reyes's opinions on remand.

Phil Najera, P.T.

Mr. Najera completed a physical capacities examination of Plaintiff in April 2017. (AR 578-82.) Mr. Najera concluded that Plaintiff could perform sedentary work, and would need the ability to alternate between sitting and other activities in order to "maximize work tolerance to the 8-hour day." (AR 578.) According to Mr. Najera's testing, Plaintiff was capable of standing and walking on a frequent basis (between 1/3 and 2/3 of a workday), and sitting only up to 1/3 of a workday. (AR 581.)

The ALJ did not discuss Mr. Najera's opinion. The Commissioner argues that this error is harmless because the opinion was rendered more than a year after Plaintiff's DLI and does not relate back to the adjudicated period. Dkt. 11 at 10-11. The Court agrees. Because Mr. Najera did not have an ongoing treating relationship with Plaintiff or have any access to Plaintiff's records during the adjudicated period, Mr. Najera's opinion was entirely based on post-DLI evidence. Moreover, Mr. Najera's findings were contradicted by the pre-DLI evidence: the State agency consultants reviewed the record dating to the period and found that this evidence showed Plaintiff was limited to standing for two hours per day and sitting for six. (AR 157-58.) Plaintiff was not referred to physical therapy at Mr. Najera's clinic until after the DLI, which suggests that his condition may have worsened after the DLI. (AR 541-91 (physical therapy records from October 2016 to April 2017).)

Because Mr. Najera's opinion post-dates the DLI, is not retrospective in nature, and is

inconsistent with the pre-DLI evidence, the ALJ's error in failing to discuss the opinion is harmless. *See, e.g.*, *Slack v. Astrue*, 2010 WL 2354073, at *1 (C.D. Cal. Jun. 8, 2010) (where the claimant "points to nothing in the post-DLI reports indicating that her impairment was disabling prior to the expiration of insurance[,]" "it was not error not to consider the opinion of [the treating physician], for there was no opinion referencing the relevant time period").

## **CONCLUSION**

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this 6th day of March, 2020.

Mary Alice Theiler
United States Magistrate Judge